## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

MICHAEL L. CASEY,

                **Plaintiff,**

     v.                                  Civil Action No. 2:16cv482

BANK OF AMERICA, N.A.,

                **Defendants.**

### OPINION & ORDER

This matter is before the Court pursuant to Defendant Bank of America, N.A.'s ("Defendant" or "BANA") Motion to Dismiss ("Motion"). Doc. 6. For the reasons stated herein, the Court **DENIES** the Motion as to Counts I and II and **GRANTS** the Motion as to Count III.

### I. BACKGROUND

**A.    Factual Allegations[1]**

On March 21, 1994, Michael L. Casey ("Plaintiff") entered into a mortgage loan, evidenced by a note and secured by a deed of trust, to purchase a home. Am. Compl. ¶ 8. Bank One Mortgage Corporation was the original lender on the mortgage and BANA became the holder of the note. Id. At some point, Plaintiff fell behind on his mortgage payments. Am. Compl. ¶ 10. In early 2009, Plaintiff entered into discussions with BANA regarding loan modification. Am. Compl. ¶ 11.

---

[1] "In considering a motion to dismiss, [the Court] accept[s] as true all well-pleaded allegations and view[s] the complaint in the light most favorable to the plaintiff." Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993)). The Court cautions, however, that the facts alleged by Plaintiff are recited here for the limited purpose of deciding the instant Motion to Dismiss. The recited facts are not factual findings upon which the parties may rely for any other issue in this proceeding.

On April 26, 2010, when Plaintiff was in arrears and BANA was threatening foreclosure, a BANA representative "assured [Plaintiff] that if he paid [BANA] $11,000 in spendable funds within 48 hours thereafter, he would be current and would not face any foreclosure action." Am. Compl. ¶ 18. BANA further assured Plaintiff that "he would remain current on what would be a loan modification by making ten monthly payments of $1,390, with the first of those $1,390 payments to be made on May 26, 2010 and the remaining payments on the 26[th] day of successive months." Id.; Doc. 9 at 2. Plaintiff timely delivered $11,000 in spendable funds, in the form of a cashier's check, to a branch office of BANA in Norfolk "and delivered the same to Linda Rudnick, Personal Banker at that branch of [BANA]." Am. Compl. ¶ 21. BANA, through Ms. Rudnick, accepted Plaintiff's $11,000 cashier's check. Am. Compl. ¶ 22. In accepting Plaintiff's funds, Ms. Rudnick repeated the assurances made by the initial BANA representative, "to wit: that if [Plaintiff] paid the $11,000 in spendable funds within 48 hours, he would be current and would not face any foreclosure action." Am. Compl. ¶¶ 18, 22; Doc. 9 at 2. Plaintiff avers that BANA, in accepting his funds and making such statements, did so fraudulently and without any intent to abide by its [ ] fraudulent assurance." Am. Compl. ¶ 22. Further, Plaintiff claims Ms. Rudnick, "in repeating the said assurances, made such assurances as an intentional falsehood with intent to mislead [Plaintiff], and did mislead [Plaintiff]." Id.

Plaintiff claims BANA retained Plaintiff's $11,000 "for a material period of time before returning the same to [Plaintiff]." Am. Compl. ¶ 23. "After accepting the $11,000 cashier's check, [BANA] instructed a substitute trustee to foreclose on the home. The substitute trustee advertised the home for sale on May 26, 2010." Am. Compl. ¶¶ 25, 26. After the advertisement was published, BANA sent Plaintiff documents and instructed Plaintiff "to return the documents along with a considerable sum of money to be considered for a loan modification." Am. Compl.

¶ 27. BANA then called Plaintiff and informed him "a 'negotiator' would call him to discuss." Am. Compl. ¶ 28. Plaintiff obtained legal counsel and filed a lawsuit that resulted in the cancelation of the foreclosure scheduled for May 26, 2010. Am. Compl. ¶ 29.

## B. Procedural History

This case was removed to this Court on August 5, 2016. Doc. 1. On August 15, 2016, Plaintiff filed the Amended Complaint in this Court. Doc. 5. On August 31, 2016, BANA filed the instant Motion to Dismiss. Doc. 6. On September 15, 2016, Plaintiff responded in opposition to BANA's Motion. Doc. 9. Also on September 15, 2016, Plaintiff filed a Motion for Leave to File Late Memorandum in Opposition to Motion to Dismiss ("Motion for Leave"). Doc. 10. On October 7, 2016, the Court DISMISSED Plaintiff's Motion for Leave as MOOT. Doc. 13. On October 11, 2016, Plaintiff's counsel filed a Motion to Withdraw Appearance as Counsel and for Removal from Electronic Notification Lists ("Motion to Withdraw"). Doc. 14. On October 26, 2016, the Court GRANTED Plaintiff's counsel's Motion to Withdraw. Doc. 17.

## II. LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss tests the sufficiency of a complaint; it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Venkatraman v. REI Sys., Inc., 417 F.3d 418, 420 (4th Cir. 2005) ("In considering a motion to dismiss, we accept as true all well-pleaded allegations and view the complaint in the light most favorable to the plaintiff") (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993)). A

complaint establishes facial plausibility "once the factual content of a complaint allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). Therefore, the complaint need not include "detailed factual allegations" as long as it pleads "sufficient facts to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct." Id. Although a court must accept as true all well-pleaded factual allegations, the same is not true for legal conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

In deciding the motion, a court may consider the facts alleged on the face of the complaint as well as "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint.'" Moore v. Flagstar Bank, 6 F. Supp. 2d 496, 500 (E.D. Va. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (1990)). The court may look to documents attached to the complaint and those incorporated by reference without converting a Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. See Pueschel v. United States, 369 F.3d 345, 353 n.3 (4th Cir. 2004) (citations omitted).

Additionally, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the heightened pleading standard of Rule 9(b), a Plaintiff must plead with particularity "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." In re Mut. Funds Inv. Litig., 566 F.3d 111, 120 (4th Cir. 2009) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784

(4th Cir. 1999)). However, "Rule 9(b) allows conclusory allegations of defendant's knowledge as to the true facts and of defendant's intent to deceive." Harrison, 176 F.3d at 786; see also Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other condition of mind of a person may be averred generally."). In fraud cases, "lack of compliance with Rule 9(b)'s pleading requirements is treated as a failure to state a claim under Rule 12(b)(6)." Id. at 785 n.5 (internal citations omitted).

### III. ANALYSIS

**A.    Count I: Actual Fraud**

Under Virginia law, a "litigant who prosecutes a cause of action for actual fraud must prove by clear and convincing evidence: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." State Farm Mut. Auto. Ins. Co. v. Remley, 270 Va. 209, 218 (2005) (citations omitted). Generally, fraud "must relate to a present or pre-existing fact, and cannot ordinarily be predicated on unfulfilled promises or statements as to future events." Patrick v. Summers, 235 Va. 452, 454 (1988). With regard to promises and future events: "if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of actual fraud." SuperValu, Inc. v. Johnson, 276 Va. 356, 368 (2008). However, "the plaintiff must clearly allege that the promisor did not intend to perform the promise at the time the promisor made the purportedly fraudulent statement." Bennett v. Bank of Am., N.A., 3:12cv34, 2012 WL 1354546, at *7 (E.D. Va. Apr. 18, 2012) (citing Station #2, LLC v. Lynch, 280 Va. 166, 172 (2010)).

Defendant argues Count I fails because Plaintiff does not allege BANA's intent to deceive or cause harm, fails to identify any breach of contract, and has no damages to recover. Doc. 7 at 5–8. Defendant notes that the Amended Complaint does not "specifically allege the actual amount owed or when Plaintiff came to learn of the actual amount owed" on the loan. Id. at 6. However, "Plaintiff's theory necessary implies that BANA intentionally misled Plaintiff into delivering a payment that BANA did not want, did not keep and which Plaintiff does not deny was less than the full amount owed." Id. at 6. As BANA received nothing, Defendant claims "there is no basis for inferring that BANA's representative intended to deceive Plaintiff. And, insofar as BANA's representative did not know that Plaintiff would suffer the harm Plaintiff seeks to recover, there is no basis for inferring that he or she acted maliciously." Id. Also, Plaintiff "does not allege that [the BANA representative] had knowledge of Plaintiff's plan to liquidate his retirement account, and incur some penalty in the process, in order to make the payment." Id. at 7. Further, "Plaintiff cannot satisfy Rule 9(b)'s requirement of alleging 'what was obtained' because BANA obtained nothing from this purported scheme, other than the administrative hassle of returning Plaintiff's money." Id. at 6.

Defendant claims Count I also fails because Plaintiff has no recoverable damages and "Plaintiff's allegations of reliance and harm are illusory." Id. at 7–8. Defendant notes that "Plaintiff has no basis to complain about negative credit reporting, loss of quiet enjoyment, or his lawsuit to stop the foreclosure because Plaintiff has not alleged that . . . he would have avoided these outcomes" by not obtaining the $11,000 cashier's check. Id. at 7. Further, "because Plaintiff was in default on his Loan, it cannot be gainsaid that he should have expected to face these outcomes unless he paid his lender the amounts due under the Note and Deed of Trust." Id.

Plaintiff alleges that BANA, through its initial representative's statements, and confirmed by Ms. Rudnick, "intentionally sought to mislead [Plaintiff]." Am. Compl. ¶ 19. Plaintiff claims that "he relied on such false information and, because of such reliance, went to considerable expense, including making expensive loans on retirement, incurring penalty thereby, not knowing that he was relying on incorrect information." Doc. 9 at 2. Further, Plaintiff alleges that BANA's assurances "were intentionally false and part of a pattern and practice by [BANA] of giving borrowers false assurances of safety from foreclosures to prevent borrowers from stopping foreclosures, including through bankruptcies." Id. at 3. Also, if BANA had not made such "intentionally false assurances[,] . . . [Plaintiff] would not have gone to the expense and considerable trouble to obtain the $11,000 in spendable funds that he paid to [BANA]." Id. at 4.

At this stage of the proceedings, Plaintiff pleads fraud with sufficient particularity by alleging the time, place, and contents of the false representation. Plaintiff alleges that on April 26, 2010 a BANA representative "assured Casey that if he paid [BANA] $11,000 in spendable funds within 48 hours thereafter, he would be current and would not fact any foreclosure action." Am. Compl. ¶ 18. Plaintiff contends this assurance was repeated by Ms. Rudnick, a personal banker at a Norfolk branch office of BANA. Am. Compl. ¶ 21. Plaintiff claims damages as a result of his reliance on this representation, namely the "financial loss of the penalty expense necessary to obtain the $11,000." Doc. 9 at 18. Additionally, this matter is similar to Matanic v. Wells Fargo Bank, N.A. 3:12cv472, 2012 WL 4321634, at *6 (E.D. Va. Sept. 18, 2012). In Matanic, this Court did not dismiss a fraud claim where a servicer, on the day before a foreclosure, allegedly gave false assurance to a borrower that the servicer would cancel the foreclosure if the borrower promptly transmitted certain tax information. Id. Taking Plaintiff's

allegations as true, such allegations are sufficient to survive a motion to dismiss.  Therefore, the Court **DENIES** Defendant's Motion to Dismiss as to Count I.

## B.      Count II: Constructive Fraud

"To prevail on a constructive fraud claim, a plaintiff must show by clear and convincing evidence that the defendant negligently or innocently made a false representation of material fact, and that the plaintiff suffered damage as a result of his reliance upon that misrepresentation."  SuperValu, Inc., 276 Va. at 367–68.  "Under no circumstances, however, will a promise of future action support a claim of constructive fraud."  Id. at 368.

Defendant argues Count II fails because Plaintiff had no basis for relying on BANA's alleged representation. Doc. 7 at 9. Defendant claims that "[b]ecause Plaintiff is precluded from relying on any unperformed promise theory, Plaintiff must show that some statement of existing fact was false and that plaintiff reasonable [sic] relied on that statement."  Id.  Defendant contends that "Plaintiff simply cannot accomplish this objective without alleging the actual amount owed under the Loan and some reason his belief in BANA's false representation that he only owed $11,000 was reasonable."  Id.  According to Defendant,

> if the amount actually owed exceeded $11,000 (which it quite obviously did or Plaintiff would have sued BANA for failing to abide by the Loan) and Plaintiff could have added up the payments he missed and determined that $11,000 would not have brought the Loan current, then he had no basis for relying on BANA's alleged representation.

Id.  Additionally, "Plaintiff still has no damages to recover as previously discussed. Therefore, Plaintiff's claim for constructive fraud must also be dismissed."  Id.

Plaintiff claims he properly pled a claim for constructive fraud. Doc. 9 at 19.  Plaintiff acknowledges that "a claim for constructive fraud cannot relate to an assurance regarding the

future." Id. Plaintiff, however, avers that "when [Plaintiff] paid the $11,000 to the bank, Rudnick assured him he was current, which was a false statement as to a present fact." Id.

The Parties, in large part, rely on the same arguments made regarding Count I for actual fraud. Viewing the alleged facts in the light most favorable to the Plaintiff, and for the same reasoning provided for Count I above, the Court finds the Plaintiff sufficiently pled a claim for constructive fraud. As such, the Court **DENIES** Defendant's Motion to Dismiss with regard to Count II.

**C.     Count III: Breach of Covenant of Good Faith and Fair Dealing**

"Under Virginia law, every contract contains an implied covenant of good faith and fair dealing; however, a breach of those duties only gives rise to a breach of contract claim, not a separate cause of action." Frank Brunckhorst Co., L.L.C. v. Coastal Atlantic, Inc., 542 F. Supp. 2d 452, 462 (E.D. Va. 2008); see also Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A., 251 Va. 28, 33 (1996). Additionally, a party does not violate the obligation to act in good faith by "enforcing a contractual right." Albright v. Burke & Herbert Bank & Trust Co., 249 Va. 463, 467 (1995). This implied covenant is not recognized "in contracts outside of those governed by the Uniform Commercial Code ("U.C.C."), and the U.C.C. 'expressly excludes the transfer of realty from its provisions.'" Harrison v. U.S. Bank Nat'l Ass'n, No. 3:12cv224, 2012 WL 2366163, at *4 (E.D. Va. June 20, 2012) (quoting Greenwood Assocs., Inc. v. Crestar Bank, 248 Va. 265, 270 (Va. 1994)); see also Va. Code § 8.9A-109(d)(11) ("This title does not apply to the creation or transfer of an interest in or lien on real property, including a lease or rents thereunder . . . ."). Authorities in Virginia do not support the existence of a claim for breach of the implied covenant of good faith and fair dealing except in contracts governed by the U.C.C., a body of law which expressly excludes the transfer of realty from its provisions. Consequently,

the Court **GRANTS** the Motion as to Count III and accordingly **DISMISSES** Count III with prejudice, for failing to state a claim.

### IV. CONCLUSION

For the reasons stated above, the Court **DENIES** the Motion as to Counts I and II and **GRANTS** the Motion as to Count III. Doc. 6. Accordingly, the Court **DISMISSES** Count III with prejudice, for failing to state a claim.

The Clerk is **REQUESTED** to send a copy of this Order to all counsel of record.

It is so **ORDERED**.

                              /s/
                    Henry Coke Morgan, Jr.
                    Senior United States District Judge

                    HENRY COKE MORGAN, JR.
                    SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, VA
January 4, 2017